Our first case this morning is Stuart Harrow v. Department of Defense, 2022-2254. Ms. Giboney. Good morning, Your Honors, and may it please the Court. Kyla Giboney from Berger-Montague on behalf of Petitioner Stuart Harrow, who is with us in the Court today. In its unanimous decision in this case, the Supreme Court held that Section 7703B1A's 60-day deadline is not jurisdictional, but an ordinary claim processing rule. Like other claim processing rules, it is presumptively subject to equitable tolling, and a party seeking to overcome that presumption, like the Department here, must contend with a high bar. The Court also recounted the extraordinary circumstances surrounding Mr. Harrow's case. The five-year delay in the— The mistake was his, right? It wasn't a governmental mistake. It was his mistake. The— And why is—therefore, why does equitable tolling apply? So, Your Honor, the—in these—the extraordinary circumstances of the Board losing a quorum for five years and Mr. Harrow not receiving the decision for seven is— But that's because we didn't update his email. Yes, Your Honor. We—as—yes. And Mr. Harrow should have updated his email with the e-filing system for the Board. We do not argue—we do not argue that. And had he done so, he would not be seeking this Court's—asking this Court in equity to toll the deadline. But we do think that, based on the extraordinary circumstances here, that even with that mistake, he should be entitled to tolling. What about our OHA decision? I mean, if I were to read that decision as holding two separate grounds for demanding that this timing deadline be mandatory and not subject to equitable tolling, then we would have to go and bonk to reverse that second part of OHA, which relied on the federal rules of appellate procedure. Is that right? We do not believe that this Court is bound by what Your Honor refers to as the second holding in OHA. We think that that is dicta. And because this Court—the majority of this Court in OHA made its decision based on Section 7703b1a's deadline being jurisdictional, citing to Lonzo, this Court's earlier decision, that the language that the Department cites is dicta, and that this Court is not bound by it. And to the extent that this Court does believe that it would need to go and bonk to formally overrule OHA, we think that it would be appropriate for the Court to do so in light of the Supreme Court's decision in this case. What do you think—assuming that we were to get to the merits, how would you distinguish the Einboden case, which seems to be one that gives very broad discretion to the agency with respect to the question of whether the efficiency of the government is served, particularly with respect to firmers? Yes, Your Honor. Thank you for that question. We believe that the Einboden decision—that the Board did not faithfully apply this Court's Einboden decision, and in particular the three requirements that this Court articulated in Einboden. And in order to meet the efficiency of the service standard in the furlough context, which is that there is a cause for the furlough, sort of a trigger, which in this case is the budgetary deficit that the department— But that's clearly satisfied here. Yes. Yes. Okay. And then we think that there—but we do think that there is this second requirement, which is that the furloughing agency, the department here, show that its decision is a reasonable management decision. And this Court in Einboden also referred to that as the nexus requirement, that there is this second requirement that, in this case, the Board simply skipped. It skipped that step. And our read of— What would that step entail? I mean, there's a suggestion that Mr. Harrow was a particularly effective employee, saving the government a lot of money. Would that be a pertinent factor that should be considered? And if so, are we in a position, or is, for that matter, the Board in a position, to start saying, well, Mr. Harrow was more effective than Mr. Jones or Mr. Bryson, and therefore he should not be furloughed, but one of them should instead? That strikes me, and I think the tone of Einboden was, that's the kind of inquiry that we really are not equipped to make. Yes, Your Honor. So we don't—first, we don't think that the Court need decide today what exactly would satisfy the reasonable management decision requirement, because, in this case, the Board simply did not address it. It found no evidence to support it. And the Department did not put forward any evidence that that requirement had been satisfied. And we don't necessarily think that it need be an individualized inquiry that goes— What kind of inquiry do you envision? Yes. So we think that the inquiry that it must—that the Department or the furloughing agency needs to address efficiency. We think that is a critical part of the efficiency of the service standard that Congress intended to apply to 7513A. And so that could be something as simple as an indication that the Department has considered whether it is going to apply an across-the-board furlough, because that is the most efficient manner of— I guess it's undisputed that in this case, the decision was made not to furlough the military employees but to furlough civilian employees. Now, why isn't that sufficient to get across the line of efficiency of the government, a judgment that the Department of Defense was entitled to make? We don't think that that meets the Department's burden here because it's not related to efficiency. And that is the term that— is we should keep the military, which is the core function of the Department of Defense, in place but not the civilian employees at the Department. Why isn't that a form of determination of efficiency? So, Your Honor, that—it may be. The Department did not put forward that argument. It did not submit evidence of that below. The Board did not, in its decision, did not look at that determination by the Department in addressing the efficiency of the service standard. It simply said that it had— the ALJ, in the initial decision, said, I have no doubt that the Department continued to face a budget shortfall. Therefore, its decision to furlough Petitioner Stuart Harrow was a reasonable management decision and met the efficiency of the service standard. I'm struggling still to understand what the level of inquiry is that you think is required for making a finding of a reasonable management solution. I thought your argument below was a very individual-based one for Mr. Harrow, how there'd be financial difficulties for him personally, how he personally provides uniquely, I suppose, some kind of value to the Department, and for those reasons he personally shouldn't be furloughed any number of days. You seem to not be advancing that today, and so I'm not—and in response to Judge Bryson's question, I didn't quite hear exactly what is it that you're looking for, given that the idea of making a distinction between the civilian, non-civilian people is not good enough for you. Yes, Renner, so we do not necessarily believe that an individual—an employee-by-employee determination needs to be made, and we actually think that that is not— that the Department attacked sort of a straw man in arguing that that was what Mr. Harrow's— So what's your proposal here, then? Our proposal would be that the Department must come forward with— must stop and think about whether furloughing all of its employees across agencies, if that's the manner that it chooses to undertake the furlough, is reasonable in light of efficiency, and that there must be some showing. But isn't there evidence here that the Department was taking all kinds of measures before doing the furlough? I don't know, cutting back on travel and training and maybe cutting temporary employees, all other things before getting to the furlough step. So, I mean, why isn't there, at least on this record, a clear logical sequence of trying to throw everything overboard before we get to the furloughs? Yes, Your Honor, we acknowledge that, and that is articulated in the record, but that goes to that first requirement, that there be a cause for the furlough, that after making those cutbacks, that the Department continue to face a budget shortfall. We think that goes to the first requirement, but not the second, that the furloughs are a reasonable management decision. Thank you. You enter your rebuttal, and apparently you wish to save it. I do, yes. Thank you. Oh, yes, unless there are any further questions. Thank you. Ms. Coleman-Coburn. Good morning, Your Honors. May it please the Court. I want to start with the timeliness issue. I think there's no dispute, obviously, that the appeal was filed not timely, and so the question is just whether or not equitable tolling is theoretically possible and been established on, if theoretically possible, been established on the facts of Mr. Harrow's case. And then you also make an argument with respect to the mandatory nature of the filing requirement. Yes, exactly. And could you address the question that Judge Chet asked about the status of OHA? Yes, so I think OHA is still binding precedent in this court, and if the court wants to reverse it, it would require an en banc panel of the court to do so. Do you think that the language at the end of the Harrow Supreme Court decision tells us something about the state of play with respect to the mandatory requirement, because they say that at least to reinforce, I would think is a fair way to put it, the notion that non-jurisdictional timing rules are presumptively subject to equitable tolling. That's the language they used. Does that not at least undercut what OHA had to say? I don't think so, Your Honor, because OHA acknowledged and responded to that very standard. So the OHA court sort of took Irwin, which is where sort of the origins of that presumption, and looked at whether or not that presumption has been rebutted in the context of 7703, concluded first that that deadline was mandatory. This is saying this presumption seems to be applied in this case. That language that I'm reading from at the end of the Harrow case doesn't seem to me at least to admit a situation in which you can say, well, with respect to this kind of case, the mandatory argument is applicable. Well, so I think it's sort of the situation is that there is this presumption of tolling, and sometimes it can be rebutted. And where it's rebutted, then that becomes a mandatory deadline. And that's the analysis that the OHA court undertook, right? I'm confused now. Are you saying that the mandatory notion is just a subset, in effect, of equitable tolling, such that if you find that equitable tolling is not justified, that it's mandatory? No. That's what I took away from your last question. Sorry. So I think we used to have two categories of deadlines. They were mandatory and jurisdictional, or they were not jurisdictional and then not mandatory and open to tolling. I think in recent years, the Supreme Court has split that first category into two, and so now we have three categories of deadlines. We have jurisdictional, which are necessarily mandatory because they're jurisdictional. We have non-jurisdictional but still mandatory, and so no equitable tolling is possible sort of no matter what the facts are. But I guess the question, though, is with respect to that second category, does that still exist? What case from the Supreme Court actually recognizes and applies that second category? Sure. So most explicitly, that's the nutraceutical case at the Supreme Court that specifically recognizes the existence of a non-jurisdictional but mandatory and not subject to equitable tolling deadline. And I think it's also the court in that case actually apply that doctrine?  Yes. Not nutraceutical. And what was the nature of the statute in that case? So it wasn't a statute. It was Rule 23-F. It was in a class action, I think maybe interlocutory appeal context. But they held that that was a non-jurisdictional because it's not in a statute but nevertheless mandatory rule, and therefore, that deadline was not subject to equitable tolling. Is there any statutory case in which the court has recognized mandatory as a category? So I think part of the issue is that HERA was the first time that the Supreme Court held that a Article III court of appeals deadline was not jurisdictional. And so obviously, Rule 26 is a federal rule of appellate procedure, so we're only talking about court of appeals deadlines. And so I think we're sort of the Supreme Court has not really had an occasion to think about that aspect of it because the previous deadlines that it had found to be non-jurisdictional were just not in this context. But the OHA court did specifically consider whether, as it reflected, that Irwin and its progeny placed a general burden on Congress to avoid the presumption of equitable tolling. And they think that Congress has satisfied that burden here. Okay, well, what would be the category of cases, if you could give me a description of the class of cases in which a timing requirement, which is deemed non-jurisdictional, is nonetheless mandatory? How would you describe that category of cases as opposed to the other category of cases in which you skipped from its being non-jurisdictional to saying that equitable tolling applies presumptively?  So I think the best category of cases is the ones that are subject to federal rule of appellate procedure 26b2. So they would be notices of appeal or petitions to enjoin, set aside, suspend, modify, enforce, or otherwise review in order of an administrative agency, board, commission, or officer of the United States, because the court is not allowed to extend the time to file those unless specifically authorized by law. So whether we talk about that as sort of flipping the presumption or rebutting the presumption, for these cases, the court may not extend the time to file unless there is a specific authorization specifically authorized by law. And then we look at 7703b1, and there is no such authorization. At most, OHA, the part you're relying on, is an alternative holding, right? I'm trying to think through. One reason of OHA is that primarily it was simply following this court's precedent in Monzo. 7703b1 is jurisdictional, period. And then we've got some other backup additional commentary we want to share with you about the nature of frack and how that also lends support to the idea that this is a mandatory deadline, not subject to the deadline. And if that's the case, then maybe it's not truly binding. So Monzo was a pre-Irwin case, and OHA was a post-Irwin case. And so I think part of the reason for the analysis was a question of, did the Supreme Court's decision in Irwin sort of change the posture on Monzo? But I think even if it is sort of an alternative holding, I think even if they didn't need to sort of go through that analysis, they did go through that analysis, and it is a holding, and they held that it was mandatory, and then capped that off with it being jurisdictional. So I think given the analysis that they did and given that they went through and made this conclusion, that that is part of the court's binding precedent. I think certainly the OHA court did not intend that to be dicta. They intended it to be an integral part of their holding in concluding that that deadline was mandatory. So the simplest resolution on the equitable tolling is that there is just no equitable tolling available for this deadline sort of under any circumstances. I think there is sort of two other hurdles that Mr. Harrow has to clear here on the timeliness of his specific petition. One, of course, is the fact that Congress changed the statute and changed the trigger for running the clock to be from receiving the decision to the issuance of the decision. And his entire argument, sort of his basis for tolling here, is the delay in the receipt of the decision. And so if sort of I think by permitting tolling on that basis, that undermines the specific change that Congress made in the statute. And then second of all, really I think what we have here is an example of maybe excusable neglect, but certainly not extraordinary circumstances beyond Mr. Harrow's control. It's probably a case of detrimental reliance in the sense that the agency set up an automatic email forwarding system to benefit its employees when it changed email services from one thing to the next. And he in fact saw that he was getting his emails from the old account to the new account being automatically forwarded. And as far as I can tell from the record, there was no warning given to him that, okay, this automatic forwarding of emails is not going to last forever. It's going to end on date X, so beware of that. And if that's the case, then why isn't this a situation where he was quite reasonable in relying on this automatic forwarding of email scheme? Well, one simple answer is that that's not the standard for equitable tolling. Equitable tolling requires extraordinary circumstances beyond Mr. Harrow's control, and it was certainly within his control to log into the MSPB system and update his email address to be the new email address. He was aware that his email address was changed. He knew that he had signed up for electronic service from the MSPB. I understand all that, but that doesn't get to my little theory of detrimental reliance. Well, I don't think there is a detrimental reliance sort of aspect to equitable tolling. So I think that's the simplest answer to that question, because whatever else, he certainly knew that his email address had changed, and the simpler and most prudent thing to do would be to update that in the court filing system where you knew that that's the only way that the board was going to contact you, and he certainly had years, I think, to do so before the decision came out. You say detrimental reliance has no role to play in equitable tolling. That struck me as a little harsh. I mean, suppose that he had called the board every couple of weeks to ask if a decision had been made, and he was told no, when in fact it had been made. You don't think that would be the basis for equitable tolling on the basis of detrimental reliance? You don't want to take a position as broad as detrimental reliance has nothing to do with equitable tolling, do you, really? I don't think I need to in this case, so I won't. I'm looking for whether you want to or not. But I think although even in that hypothetical, that would be, of course, the board is not the respondent in the case. So I don't know how that would play. But I think in this case, it's much simpler that even if the court gets to equitable tolling, these are circumstances that were both ordinary and plainly within Mr. Harrow's control, and therefore cannot meet the standard for equitable tolling. Before we run out of time, could we get quickly to the merits of what does it mean to be a reasonable management solution? I guess what I'm wondering is when it comes to promoting the efficiency of service, why is it so that the management, the agency, can do this sort of categorical decision across the board that will apply to maybe thousands of people without looking at any other information on the other side? So I think I disagree with the not looking at any of the other information on the other side point, but to the first half of the question as to why it's categorical. And I think the best answer is because a furlough is, although an adverse action, is by definition non-disciplinary. So it is not the case, and therefore, in fact, that it has to be applied in a fair and even manner, and I think that sort of necessarily implies some across-the-board decision-making. And so in this case, the board did look at the underlying facts, and that's at Appendix Page 16 of the decision, and the testimony from then-Under Secretary Hale and also the memorandum from then-Secretary Hagel of all of the things that the department did first and the ways that they tried to sort of stop the, address the budget shortfall, and that ultimately sort of when it came down to, they were faced with this decision of, do we further erode military readiness, or do we furlough the civilian population? And they concluded that sort of in that category of difficult and unpleasant choices, that sort of ultimately the department's primary mission was the military readiness. What would you say? Would you say there's some kind of administrative convenience rationale? Oh, we have to save this block of money, and so we're just going to furlough 10,000 people. Because it would be administratively inconvenient to look at each one of these 10,000 people. Well, I think more than that, it would be sort of less fair, right? The whole point of a furlough is that it is not a disciplinary action. There's nothing wrong with your work, and sort of all other things being equal, we would love to be able to do the military readiness and keep the civilian population, but all other things are not equal, and therefore, do we prioritize the military readiness? But that means we have to take deeper cuts on the civilian side of our budget, and that's ultimately what is reflected in Secretary Hagel's memorandum, that that was the decision that he made. And that is a form of efficiency of the service overall. Counsel, I think you have to be furloughed, at least for purposes of this argument. Thank you very much. Helen has a little rebuttal time. Yes. Thank you, Your Honor. There's a few points. So we do think that it is notable in response to Judge Bryson's question that the Supreme Court, in fact, has not and has expressly withheld judgment on whether non-jurisdictional statutory deadlines, like 7703b1a, are subject to equitable tolling. And that is, I don't believe we cited this case in our briefs, but that's the Fort Bend County, Texas v. Davis decision in the Supreme Court. And we think that nutraceutical, the case that the Department relies on, is distinguishable for several reasons, the first of which, as Your Honors noted, is that it is not a statutory deadline. It refers to a deadline that is within the federal rules. Actually, in my day job, I am an antitrust class action attorney, and we deal with Rule 23-F a lot. And it's seeking permission to appeal, so it's interlocutory. It's also from one Article III court to another Article III court, and the Supreme Court has explicitly carved out that type of deadline as one that should be adhered to more strictly than others. Statutory deadlines, like the one at issue here, the Court has not said need to be subject to that level of adherence. And we also agree that at the end of the Supreme Court's decision in this case, the citation in particular to Bockler is notable. Bockler goes through a number of circumstances that the Supreme Court, when the Supreme Court has said that equitable tolling should be available, sort of factors in different cases, looking at the circumstances of the case to determine whether Congress indicated that tolling should be available. And we go through those in pages 14 through 17 of our opening brief. The Department did not respond to any of those factors, and we think something with no guidance from the Supreme Court on this issue, we think that something along the lines of all the factors should be considered when determining whether tolling is available here. We think that all the factors in Bockler weigh in favor of tolling. And we also note that with regard to FRAP 26b-2, that the Department does not cite any other circuit court that has agreed with its interpretation that that rule displaces the availability of tolling, the presumption of tolling. And, in fact, in our brief, we cite a decision from the Second Circuit that continues to apply the presumption of tolling to non-jurisdictional statutory deadlines like the one here. And then other circuit courts have more recently addressed this in their decisions that the D.C. Circuit addressed it in a decision we did not cite but which I'm happy to provide to the Court and to the Department, squarely addressed this and rejected the argument that the Department makes here. What is that case, if you have it? Oh, yes. So that is Nelson v. Security and Exchange Commission. And I apologize that we didn't put this on the docket, but I have copies of it. We can find it. And then just briefly on the merits, the language in OHA, if the Court goes back and looks at that alternative holding in OHA, we don't think that it's anywhere near as clear as the Department would make it out to be. It's sort of a, we surely believe that Rule 26 and Rule 15 would overcome the presumption here. And so we don't believe that that's a basis to conclude that Congress has evinced a clear intention to overcome the presumption of tolling. Thank you to both counsel. Thank you. The case is submitted.